# ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

FRANKLIN A. ROTHMAN
JEREMY SCHNEIDER
ROBERT A. SOLOWAY
DAVID STERN

LUCAS ANDERSON

Tel: (212) 571-5500
Fax: (212) 571-5507

April 12, 2015

<u>Via ECF</u>
Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:  <u>United States v. Matthew Davis
         14 Cr. 296 (KBF)</u>

Dear Judge Forrest:

    We represent Matthew Davis in the above-captioned case. This letter is submitted in connection with Mr. Davis's motion for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure. For the reasons presented below, it is submitted that the government did not present sufficient evidence at trial to sustain a conviction with respect to Counts Two through Five of the instant indictment, each of which requires proof beyond a reasonable doubt of an agreed exchange under 18 U.S.C. §§ 1958.

    As discussed in Court on April 8, the government's evidence did not establish the required element of an agreed exchange under § 1958. [Tr. 1777.] The federal murder-for-hire statute requires that a murder involving interstate travel or a facility of interstate commerce be committed "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value[.]"[1] As the Second Circuit has noted, "[t]he consideration requirement of Section 1958 is interpreted in the traditional sense of bargained for exchange . . . so that there must be a quid-pro-

---

[1] 18 U.S.C. § 1958(b)(1) defines "anything of pecuniary value" as "anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage[.]"

Hon. Katherine B. Forrest
April 12, 2015
Page Two

quo (or at least the promise of such) between parties to the transaction." *United States v. Hardwick*, 523 F.3d 94, 99-100 (2d Cir. 2008) (internal quotations omitted). Accordingly, the jury in this case has been instructed that

> with respect to the object of the murder for hire conspiracy charged in Count Two, the third element that the government must prove is that the alleged murder was intended to be committed as consideration for the receipt of, or as consideration for, a promise or agreement to pay anything of pecuniary value. This requires that the government prove that there was a mutual agreement, understanding or promise that something of pecuniary value would be exchanged for committing the murder.

[Tr. 1980-81.] In this case, the *only* evidence presented by the government with respect to the issue of agreed consideration was the testimony of Kevin Wilson, who testified about certain vague statements that Davis allegedly made before the charged murder took place. As this testimony indicates, there was in fact *no* agreement between Davis and Wilson as to any particular type or amount of consideration before the charged murder took place:

   Q. At any point when you were at headquarters, did anyone discuss what you might get in exchange for assisting with or committing the murder?

   A. No.

   Q. Did Matt make any statements to you about what would happen after the murder?

   A. He just said that he got me, don't worry about it.

   Q. Did Matt or anyone else mention a specific dollar amount prior to the murder?

   A. No.

   [Tr. 1314-15.]

Hon. Katherine B. Forrest
April 12, 2015
Page Three

. . .

Q. I'd like to return to something you said earlier. You said Matt said to you that he got me?

A. Yes.

Q. What did you understand that to mean?

. . .

A. That he got me, he would hold me down. Like money or whatever I needed, I could come to him for anything.

. . .

Q. Have you ever used that phrase, hold me down?

A. Uh-huh, yes.

Q. What did you mean by that?

A. Come to me for whatever.

[Tr. 1326-27.]

On cross examination, Wilson was again asked whether there had been an agreement as to any specific type or amount of consideration that he would receive as consideration for his participation in the charged murder.

Q. You still didn't know what you would get, if anything, if you did what you were supposed to do, right?

A. Right.

Q. You had no idea if there would be any payment at all for you, right?

A. I didn't know what was going to happen.

. . .

Q. There was no discussion beforehand as to what would happen if you succeeded, right?

Hon. Katherine B. Forrest
April 12, 2015
Page Four

    A. Right.

    [Tr. 1481-82.]

    Wilson was then asked about his prior testimony on direct examination that Davis had told him that he would "hold him down":

    Q. You said it came about at some point, you said that Matthew said he would hold you down, you'd be good; is that right?

    A. Yeah, yeah.

    Q. So when he said that, to you, that meant that you would be accepted by them; isn't that right?

    A. Right.

    Q. It didn't necessarily mean that he was going to give you money, did it?

    A. Meant that too. That's how we talk in street code.

    Q. Well, hold you down can mean different things, can't it?

    A. Yeah, it can mean a lot of things.

    Q. Right, exactly. Hold you down can mean watch your back, right?

    A. Right.

    Q. Hold you down can me[an], I'm with you, we'll be together, I'll protect you right, right?

    A. Right.

    Q. Hold you down can mean you get money, right?

    A. Right.

    Q. It can be any one of a different number of things and it can be even more than that, right?

    A. Right.

    Q. So the fact is, there was never a discussion between you and Matthew or you and anybody else about money, about property, about getting anything of value, was there?

    . . .

    A. Somewhere around that point it had been.

    Q. Well, what had been? Who talked to you about money?

    A. You talking to me about holding me down?

    Q. Right, exactly. And when he talked to you about holding you down, you took that to mean that he was going to accept you, right?

    A. Yeah.

    . . .

    Q. You were looking to hopefully get accepted by these guys, weren't you?

    A. A lot of things; that and money, you know.

    Q. Well, that's what you were hoping for, right?

    A. Right.

    Q. But not one of these guys – not Matthew, not Luch, nobody – ever said anything using the words 'money' or a dollar amount or anything like that, did they?

    A. Right.

    [Tr. 1483-86.]

    Not only did this testimony entirely fail to indicate whether there was ever an agreement as to a specific type, let

Hon. Katherine B. Forrest
April 12, 2015
Page Six

alone amount, of consideration, or whether that consideration could be defined as "pecuniary" under § 1958(b)(1), but other portions of Wilson's testimony indicate that the *actual* impetus for his involvement in the charged murder was a direct threat to his own life. As Wilson testified on direct examination, he had initially indicated that he did not want to be involved in the charged murder, and that in response to his initial refusal someone put a gun to his head and he heard a clicking sound. [Tr. 1302-03.] It was only at *that* point that Wilson testified he agreed to participate in the murder. [Tr. 1303. *See also* 1466-67.]

In *United States v. Frampton*, 382 F.3d 213, 218-19 (2d Cir. 2004), the Second Circuit found that testimony regarding a vague agreement for a "favor," which was substantially similar to the agreement described by Kevin Wilson in this case, was insufficient to support a conviction under § 1958. Because the alleged promise of a "favor" could not "establish that at the time the agreement was formed, the consideration was something the 'primary significance of which lay in its 'economic advantage,'" the Second Circuit upheld the District Court's judgment of acquittal as to the charged murder-for-hire counts. *Id.*, at 219 (quoting § 1958(b)(1)). The *Frampton* Court continued:

> [W]e hold that consideration in the form of a 'favor' is insufficient to support a conviction under § 1958, at least in the *absence of evidence suggesting that either party had an understanding as to the form that it would actually take*.

*Id.* (emphasis added). *See also United States v. Chong*, 419 F.3d 1076, 1082-83 (9th Cir. 2005); *United States v. Johnson*, 2013 WL 3422016, at * 7-8 (D. Conn. 2013). *Compare United States v. Gibson*, 530 F.3d 606, 610 (7th Cir. 2008) (noting that "[i]n *Frampton*, the only consideration was an unspecified favor. That is not the case here. There is evidence of consideration in the form of a cut of the drug proceeds and a money payment.").

In this case, there is no practical difference between Wilson's testimony that Davis said "he got me," or that he would "hold [him] down," and the vague promise of "a favor"

Hon. Katherine B. Forrest
April 12, 2015
Page Seven

discussed in the *Frampton* case. On both direct and cross-examination, Wilson's testimony clearly established that there was no "understanding as to the form" that Davis's alleged promise to "hold him down" would take. *Frampton*, 382 F.3d at 219.

Even if it could be said that Wilson had somehow testified as to *his own* understanding of a specific type and amount of consideration he would receive in exchange for his involvement in the charged murder, and that such consideration could be defined as "pecuniary," the government did not present *any* evidence whatsoever as to what understanding *Davis* may have had with respect to consideration before the charged murder.[2] See *Hardwick*, 523 at 99 ("[w]hen the defendant is the solicitor of the murder-for-hire, it is the defendant's intent that controls."). The jury here is required to find that there was a "mutual agreement, understanding or promise" before the charged murder, [Tr. 1981.] but aside from Wilson's testimony (which more clearly establishes that Wilson participated in the charged offense because of a prior threat to his own life) there is no evidence at all to indicate what either he or Davis intended with respect to the issue of consideration.

Therefore, on this record of evidence, a judgment of acquittal should be granted as to Counts Two through Five of the instant indictment.

Please have your chambers contact either of us if Your Honor has any questions.

Respectfully submitted,

__/S/_____
JEREMY SCHNEIDER
DAVID STERN

---

[2] Despite that fact that Wilson testified that Davis called him and said "payday," [Tr. 1350.] and that Wilson claims he was paid after the charged murder, the only relevant issue with respect to agreed consideration under § 1958 is the *intent* of the parties during the commission of the crime, regardless of what agreements, understandings, or events may take place afterwards.