UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA                  :
                                          :     1:14-cr-00296-PAC-1
     - against -                          :
                                          :     **MEMORANDUM ORDER**
MATTHEW DAVIS,                            :
     Defendant.                           :
------------------------------------------------------------------X

Defendant Matthew Davis, who is 41 years old and incarcerated at Federal Correctional Institution Loretto ("FCI Loretto"), renews his motion for compassionate release[1] under 18 U.S.C. § 3582(c)(1)(A) following this Court's denial of his initial motion on September 21, 2020. Letter Mot. 1–2, ECF No. 211 ("Renewed Mot."); *United States v. Davis*, No. 1:14-cr-00296-PAC-1, 2020 WL 5628041, at *4 (S.D.N.Y. Sept. 21, 2020). In its September opinion, the Court determined that Davis' medical conditions, including asthma, combined with the dangers of COVID-19 and his inability to take precautionary measures in prison, established extraordinary and compelling reasons for a sentence reduction. *Davis*, 2020 WL 5628041, at *3. But the Court denied Davis' motion, because the applicable sentencing factors of 18 U.S.C. § 3553(a) "counsel[ed] strongly against a sentence reduction for Davis." *Id.* at *4.[2]

---

[1] Davis and his counsel, Mr. Kaley, have each made numerous filings regarding this renewed motion. The Court has considered all of their submissions.

[2] The Court subsequently denied Davis' motion for reconsideration. *United States v. Davis*, No. 14 Cr. 296 (PAC), 2020 WL 5912811, at *1 (S.D.N.Y. Oct. 6, 2020). Although Davis appealed that denial (Notice of Appeal, ECF No. 209), he subsequently withdrew his appeal (USCA Mandate, ECF No. 216). Accordingly, the Court has jurisdiction to decide this motion.

1

The Court denied Davis' initial motion for compassionate release "without prejudice to its renewal should his health or conditions at FCI Loretto materially worsen." *Id.* Davis argues that both contingencies have since occurred, and now renews his motion based on (1) his December 3, 2020 positive COVID-19 test and resulting ill health; and (2) the outbreak of infections at FCI Loretto in late 2020, which he says demonstrate the Bureau of Prisons' ("BOP") inability to care for his health. Renewed Mot. 1–2, 3, 4, 5; Letter Mot. 2, ECF No 221 ("Def.'s First Resp. to Gov't's Surreply"). The Court agrees with the Government that these changed circumstances still do not overcome the § 3553(a) factors, which continue to counsel strongly against granting Davis a sentence reduction. Mem. Opp'n 5–6, ECF No. 214. Accordingly, Davis' renewed motion for compassionate release is DENIED.

***Extraordinary and Compelling Reasons***

As an initial matter, it is not clear that the circumstances Davis previously presented in favor of a sentence reduction—namely, the risk that he would contract COVID-19 and experience worse outcomes than others—remain extraordinary and compelling following his COVID-19 infection. Davis argues that the Government has conceded that extraordinary and compelling reasons exist (Letter Mot. 2, ECF No. 215 ("Def.'s Reply")), but the Court is not convinced. While the Government does not contest the Court's prior finding of extraordinary and compelling reasons, the Government points out that multiple courts in this district have denied motions for compassionate release where, as here, they are based not on the feared consequences of contracting COVID-19, but instead on the defendants' prior COVID-19 infection. Mem. Opp'n 4–5 (citing, *inter alia*, *United States v. Davis*, No. 12-Cr-712 (SHS), 2020 WL 3790562, at *2, *5 (S.D.N.Y. July 7, 2020); *United States v. Zubkov*, 460 F. Supp. 3d 450, 454 (S.D.N.Y. 2020)); *see also United States v. Kerrigan*, No. 16 Cr. 576 (JFK), 2021 WL

793880, at *3 (S.D.N.Y. Mar. 2, 2021) ("Having now tested positive for COVID-19 without experiencing a severe illness from the disease, the fundamental and overriding purpose of [the defendant's] request for immediate release—i.e., the desire to remove him from an environment where he may contract the virus—is significantly less compelling than when the May 14 Decision concluded that his immediate release was not warranted."); *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) ("Now that [the defendant] has been diagnosed with [COVID-19] and weathered it, a sentence reduction based on the risk of contracting it no longer makes sense."). Therefore, in determining whether Davis' renewed motion presents extraordinary and compelling reasons, the focus is no longer on his risk of infection, but on Davis' "present need for medical treatment and the adequacy of the treatment that he is receiving." *Zubkov*, 460 F. Supp. 3d at 454.

Although the parties sharply dispute the quality of Davis' health and the gravity of his symptoms, Davis' condition appears stable, and his need for medical treatment is not dire. The Government characterizes Davis' COVID-19 infection as mild, pointing to his high oxygen levels and lack of fever. Mem. Opp'n 4–5; Letter 1–3, ECF No. 218 ("Gov't's Surreply"). Davis counters that a person need not be near death for his case to be deemed serious (Def.'s Reply 3), and points to his "difficulty breathing, . . . body aches, coughs, wheezing and fatigue" as circumstances warranting a sentence reduction. Def.'s Reply 5. On December 31, 2020, Davis received a chest x-ray and an angiogram at a local hospital, after which the local physician diagnosed him with "COVID-19 pneumonia" and "acute bronchospasm." Letter ("Gov't's Suppl.") Ex. A, at 8, ECF No. 219. However, "his 'lungs [were] clear[, his] pulse ox [was] normal[, and] he [was] not in any respiratory distress.' The hospital discharged him back to FCI Loretto with 'nebulizers as needed,' but did not believe that he needed to be treated with

3

antibiotics." Gov't's Suppl. 1 (quoting Gov't's Suppl. Ex. A, at 8) (alterations in original). On January 3 and 4, 2021, Davis had no symptoms. Gov't's Surreply 2–3; Def.'s First Resp. to Gov't's Surreply 2. On the whole, while his recent diagnoses are serious, Davis' health appears stable. *See United States v. Burman*, No. 16 Cr. 190 (PGG), 2021 WL 681401, at *4 (S.D.N.Y. Feb. 21, 2021) (concluding that defendant had recovered from COVID-19 infection where he had been prescribed a nebulizer, his temperature and oxygen levels remained normal, and he had been cleared to leave isolation housing, despite his "subjective complaints of intermittent chest pain and 'exertional shortness of breath.'") (citation omitted).

Further, FCI Loretto is providing Davis with adequate treatment. "[S]ince his positive COVID test, health care professionals have examined Davis on a near-daily basis." Mem. Opp'n 5. They have prescribed Davis steroids and inhalers, along with a nebulizer machine to assist his breathing. Def.'s Reply 4–5; Gov't's Surreply 1–2. And, as mentioned above, when Davis' BOP health provider determined that "imaging may be helpful to rule out any concomitant process," the BOP transported Davis to a local hospital for a chest x-ray and angiogram. Gov't's Surreply 2. This is strong evidence that FCI Loretto is providing Davis with adequate medical treatment. Thus, Davis' claim that he is receiving inadequate care because he did not get the same medicine as former President Trump (Renewed Mot. 4) does not persuade the Court that FCI Loretto is neglecting him. *See United States v. Bush*, No. 1:18-cr-00907-PAC, 2021 WL 199618, at *2 (S.D.N.Y. Jan. 20, 2021).

The possibility that, at some point in the future, Davis might suffer worse health problems, "known and unknown," does not contribute to a finding of extraordinary and compelling circumstances. Renewed Mot. 5; *see also* Def.'s Reply 2–3. The Court declines to speculate as to what Davis might experience in the future, and while his fears are no doubt

4

genuine, "unknown future ill health effects will remain unknown whether [Davis] is in prison or not." *Bush*, 2021 WL 199618, at *2. If, in the future, Davis experiences serious symptoms which the BOP is unequipped to manage, the Court will consider them at that time. *See United States v. Maldonado*, No. 16 CR 285 (CM), 2021 WL 639069, at *4 (S.D.N.Y. Feb. 17, 2021).

Davis' second contention, that the COVID-19 outbreak at FCI Loretto merits a reduction in his sentence, is similarly unavailing. While FCI Loretto did experience a significant COVID-19 outbreak in late 2020, the number of positive cases at the facility has since reduced dramatically. *United States v. Ahmed*, No. 16-CR-826 (LTS), 2021 WL 797673, at *3 (S.D.N.Y. Mar. 1, 2021) ("While the Court appreciates [the defendant's] genuine concern about the recent outbreak of COVID-19 at his facility . . . the Court notes that the BOP now reports only 15 active COVID-19 cases among the staff, and none among the inmate population, at Loretto FCI."); *see also United States v. Giddens*, No. 19-CR-00047-FPG, 2021 WL 485697, at *2 (W.D.N.Y. Feb. 10, 2021) ("While the news article Defendant attached to his letter presents a dire picture of the situation at Loretto as of December 2020, recent BOP data suggests that the infection rate has been brought under control."); BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Mar. 3, 2021) (under "COVID-19 Cases," click "Full breakdown and additional details," then scroll to "Loretto FCI"). Indeed, that FCI Loretto reports no positive inmates and 700 inmates recovered as of March 3, 2021 suggests that Davis, too, has recovered from his infection, if not its symptoms. *See United States v. Valentin*, No. 3:14-cr-55-1 (VLB), 2021 WL 431471, at *4 n.3 (D. Conn. Feb. 8, 2021). Davis' risk of reinfection is very small to begin with,[3] and the low number of COVID-19 cases at FCI Loretto further reduces that risk.

---

[3] *Blanco*, 2021 WL 706981, at *2; *Valentin*, 2021 WL 431471, at *6–7; *Maldonado*, 2021 WL 639069, at *3 ("[M]ost experts believe that a person who has recovered enjoys immunity anywhere from . . . several months [to] perhaps several years.").

5

Additionally, "the BOP [is] committed to vaccinating all prisoners during the upcoming months," *Maldonado*, 2021 WL 639069, at *3, and has already begun vaccinating both inmates and staff at FCI Loretto. *Valentin*, 2021 WL 431471, at *4 ("The BOP reports that 115 staff members and 65 inmates at FCO Loretto are now fully vaccinated, meaning they have received both doses of the two vaccines now approved under Emergency Use Authorization from the Food and Drug Administration.") (citing BOP, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last visited Feb. 8, 2021) (click "Learn more about vaccinations and view individual facility stats," then scroll to "Loretto FCI"). These vaccinations reduce Davis' risk of reinfection even further.

Davis' recycled argument (which the Court has already rejected twice[4]) that he is suffering an unjust sentencing disparity because the First Step Act, Pub. L. 115-351 (2018) ("FSA"), reduced the mandatory minimum for his offense but did not make that amendment retroactive, does not present an extraordinary and compelling reason to reduce his sentence. Renewed Mot. 5; Def.'s First Resp. to Gov't's Surreply 2. While the Court may consider that disparity,[5] the Court retains its view that by declining to make the amendment retroactive, "Congress unambiguously decided [the reduced mandatory minimum] should not apply to [Davis]." *Davis*, 2020 WL 5628041, at *3. Accordingly, the FSA's subsequent reduction of the mandatory minimum applicable to Davis' offense is not an extraordinary and compelling reason to reduce his sentence under § 3582(c)(1)(A), and it does not affect the Court's weighing of the § 3553(a) factors. *See Rodriguez*, 2021 WL 797816, at *2 ("[T]he fact that the resulting disparity was considered acceptable to Congress militates against finding that it constitutes an

---

[4] *Davis*, 2020 WL 5628041, at *3; *Davis*, 2020 WL 5912811, at *1.

[5] *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *United States v. Rodriguez*, No. 10-CR-905-LTS, 2021 WL 797816, at *2 (S.D.N.Y. Mar. 2, 2021).

extraordinary and compelling reason for a reduction, particularly because the same disparity exists for every defendant sentenced under that provision.").

But even if Davis' current health conditions, the care he is receiving, and the facility conditions at FCI Loretto constitute extraordinary and compelling reasons, they are not sufficiently compelling to overcome the § 3553(a) factors.

### *Section 3553(a) Factors*

The sentencing factors this Court identified previously—"the 'nature and circumstances of the offense;' the 'history and characteristics of the defendant;' and the need to 'reflect the seriousness of the offense,' 'promote respect of the law,' and 'afford adequate deterrence to criminal conduct'"—continue to counsel strongly against granting Davis a sentence reduction. *Davis*, 2020 WL 5628041, at \*4 (quoting 18 U.S.C. § 3553(a)). Davis is presently incarcerated for his participation in a narcotics conspiracy; this is his fifth felony conviction, and his twelfth conviction total. *Davis*, 2020 WL 5628041, at \*1 & n.1, \*4. One of his prior convictions was for attempted murder. *Id.* at \*1. With approximately 84 months of incarceration now behind him,[6] Davis has still served "only about a third of his imposed sentence," *id.* at \*4, which is not enough for the Court to conclude that the sentence's deterrence objectives have been met. *Id.*; *see also Kerrigan*, WL 793880, at \*3 (holding that even if defendant remained at-risk following his COVID-19 infection, his renewed motion for compassionate release would be denied because "converting [the defendant's] 90-month term of incarceration into one of home confinement, when he has served little more than 35 months of his original sentence, would disserve the sentencing factors.").

---

[6] *See* Letter 1, ECF No. 222 ("Def.'s Second Resp. to Gov't's Surreply").

7

The six months that have elapsed since the Court denied Davis' initial motion for compassionate release, his COVID-19 infection, and the (now resolved) spike in COVID-19 cases at FCI Loretto have not changed the Court's view that both general and especially specific deterrence remain necessary. *See Burman*, 2021 WL 681401, at *6 ("Although [the defendant] has served another six months of his ten-year sentence, none of the facts bearing on the Section 3553(a) analysis have materially changed since this Court's June 13, 2020 order [denying a sentence reduction]."); *United States v. Moore*, No. 18-CR-167 (KMW), 2021 WL 734957, at *2 (S.D.N.Y. Feb. 24, 2021) (denying defendant's second renewed motion for compassionate release because, even if his COVID-19 infection and apparent recovery constituted extraordinary and compelling reasons, "the Court remain[ed] convinced—as it was in June and July—that [the defendant] would pose a danger to the community if he were to be released, and that the other Section 3553(a) sentencing factors continue to weigh heavily against release."); *Giddens*, 2021 WL 485697, at *2 ("[E]ven assuming there were an active, uncontained outbreak [at FCI Loretto], that fact would not outweigh the § 3553(a) factors that supported, and continue to support, Defendant's sentence.").

At its core, Davis' argument is not that he should be released to safeguard his health, but that the Court should reduce his sentence as a form of compensation for his suffering. *See* Def.'s First Resp. to Gov't's Surreply 3. The Court disagrees. "A sentence of time served or a reduction of his sentence to some other degree would not promote respect for the law or provide just punishment for the offense, considering his circumstances now and at sentencing. Instead, it would signal to [Davis] and others that they may evade responsibility by invoking temporary hardships attendant to incarceration during the pandemic." *Valentin*, 2021 WL 431471, at *8. Granting Davis a sentence reduction on this record would be a windfall, and "[t]he FSA does not

8

constitute a get-out-of-jail card." *United States v. Brady*, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020).

## CONCLUSION

Davis' renewed motion for compassionate release is DENIED. Davis' medical records (Mem. Opp'n Ex. A; Def.'s Reply Ex. 1; Gov't's Surreply Ex. A; and Gov't's Suppl. Ex. A) are accepted under seal, as they contain confidential medical information. *See United States v. McKay*, No. 1:18-cr-00339-PAC-7, 2021 WL 807108, at *4 n.8 (S.D.N.Y. Mar. 3, 2021); *Valentin*, 2021 WL 431471, at *8. But the Court will not accept the Defendant's First Response to the Government's Surreply Exhibit 1 ("Davis Letter") under seal, because it consists of correspondence that Davis himself publicly filed on ECF. *See* Def.'s Second Resp. to Gov't's Surreply, ECF No. 222; *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again."). Mr. Kaley is directed to publicly file the Davis Letter. The Clerk of Court is directed to close the motion at ECF No. 211.

Dated: New York, New York
March 17, 2021

SO ORDERED

*[signature]*

HONORABLE PAUL A. CROTTY
United States District Judge

9